**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| JULIO MARTINEZ-GUZMAN, | : | MOTION TO VACATE |
| BOP Reg. No. 59538-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
|     v. | : | 4:23-CR-0026-WMR-JHR-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 4:25-CV-0098-WMR-JHR |

## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant Julio Martinez-Guzman, a federal prisoner currently confined at the Federal Correctional Institution in Yazoo City, Mississippi, has filed a *pro se* 28 U.S.C. § 2255 Motion to vacate, correct, or set aside his 240-month sentence following his guilty plea conviction in this Court to conspiring to possess with intent to distribute methamphetamine, cocaine, oxycodone, and heroin. (*See* Mot. [127] at 1; J. [111] at 1–3.) The matter is before the Court on the § 2255 Motion and the government's Response. (Resp. [138].) For the reasons stated below, **IT IS RECOMMENDED** that the § 2255 Motion be **DENIED** and that a certificate of appealability be **DENIED**.

I.      **PROCEDURAL HISTORY**

On September 5, 2023, a federal grand jury returned a nine-count indictment against movant and five other individuals, charging movant with conspiracy to possess with intent to distribute (a) 50 grams or more of methamphetamine, (b) a mixture and substance containing cocaine, (c) oxycodone, and (d) a mixture and substance containing heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C) and 846 ("Count 1"); three counts of possession with intent to distribute 50 grams or more of methamphetamine, in violation of § 841(b)(1)(A) ("Counts 2, 3, & 9"); possession with intent to distribute a mixture and substance containing methamphetamine and a mixture and substance containing heroin, in violation of § 841(b)(1)(C) ("Count 4"); possession with intent to distribute a mixture and substance containing cocaine and oxycodone, in violation of § 841(b)(1)(C) ("Count 5"); possession with intent to distribute (a) 50 grams or more of methamphetamine, and (b) a mixture and substance containing methamphetamine, in violation of § 841(b)(1)(C) ("Count 6"); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count 7"); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 8").   (*See* Indictment [1] at 1–7.)   The Court

2

appointed an attorney, Christopher Paul Twyman, to represent movant in his criminal proceedings.  (*See* Order [39].)

Movant entered into a negotiated plea agreement under which he would plead guilty to Count 1 of the indictment.  (*See* Tr. [133] at 3–5, 15.)  In exchange, the government would dismiss the remaining counts and recommend a 240-month sentence.  (*Id.* at 15, 17.)  With respect to the advisory Sentencing Guidelines, the plea agreement stipulated that the parties would recommend that the applicable offense guideline was USSG. § 2D1.1, that movant was responsible for at least 61,111 grams of converted drug weight ("CDW"), that movant would receive a two-level upward adjustment under § 2D1.1(b)(1) for possession of a firearm, a two-level upward adjustment under § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing controlled substances, and a four-level upward adjustment under § 3B1.1(a) for being an organizer or leader of a criminal activity involving five or more participants, and that the government would recommend that movant receive the full three-level downward adjustment under §§ 3E1.1(a)–(b) for acceptance of responsibility.  (*Id.* at 16.)  Both movant and his attorney signed the plea agreement at the bottom.  (*Id.* at 3–5.)

3

At movant's change-of-plea hearing, movant testified under oath that he could speak and read both English and Spanish, that he was not under the effect of any drugs or alcohol, and that he did not suffer from any mental illness or disability (*Id.* at 7–11.)  The government summarized the plea agreement, including that movant was pleading guilty to conspiring to possess with intent to distribute methamphetamine, cocaine, oxycodone, and heroin as charged in Count 1, and that the government agreed to dismiss the remaining counts and recommend a sentence of 240 months' imprisonment. (*Id.* at 14–17.)  The government also summarized the Sentencing Guideline stipulations in the plea agreement. (*Id.* at 16.)  Movant testified that the plea agreement accurately reflected his agreement with the government, that he understood the plea agreement, that he had no questions about the plea agreement, that the plea agreement was the only agreement he had reached with the government, that no one had made him any promises not included in the plea agreement to induce his guilty plea, and that no one had threatened or forced him to plead guilty.  (*Id.* at 22–23.)  The District Court specifically questioned movant if he understood the sentencing recommendations in the plea agreement, including whether he understood that the Court was not bound by the recommendations, and that he could not withdraw his guilty plea if he received a sentence that was more severe than he

4

thought it would be. (*Id.* at 22.) Movant testified that he understood. (*Id.*) The District Court asked movant's counsel if he had made any promises concerning the specific sentence that movant would receive, and counsel testified that he had not. (*Id.* at 24.) Counsel and movant both testified that they had sufficient time to discuss the matter, and movant testified that he was satisfied with his counsel's representation in this case. (*Id.* at 24–25.)

At the Court's direction, counsel for the government recited that movant was pleading guilty to the charge in Count 1 of conspiring to possess with intent to distribute 50 grams or more of methamphetamine, cocaine, oxycodone, and heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C) and 846, and explained the elements that the government would be required to prove at trial. (*Id.* at 25–26). Movant testified that he understood the charge and its elements, that he had discussed it with his attorney. (*Id.* at 26.)

The government summarized the evidence that it would have presented at trial, including that this case resulted from a multi-month U.S. Drug Enforcement Agency ("DEA") investigation involving court-authorized wiretaps and the seizure of kilogram-quantities of methamphetamine. (*Id.* at 27.) Beginning sometime prior to

January 2021, and continuing to November 7, 2022, movant participated with others in a plan to obtain and distribute controlled substances. (*Id.*)

On January 4, 2022, movant arranged for a co-defendant to pick up one kilogram of methamphetamine from a property that movant used as a stash house. (*Id.*; *see also* PSR ¶ 41.)   When the co-defendant complained about the quality, Movant arranged for him to return the methamphetamine, and to pick up replacement methamphetamine at the same location. (Tr. [133] at 27–28.)   The co-defendant picked up the replacement methamphetamine on January 6, 2022. (*Id.*)   Later that same day, law enforcement officers made a controlled purchase from the co-defendant of 1,006 grams of methamphetamine of 96% purity, 22.15 grams of 98% purity, and 1.488 grams of 95% purity. (*Id.* at 28.)

On January 12, 2022, agents intercepted a phone call between movant and an individual arranging a delivery of methamphetamine. (*Id.*)   Officers observed the individual meet with movant at his residence for several minutes. (*Id.*; *see also* PSR ¶ 35.)   Floyd County officers conducted a traffic stop of the individual's vehicle and located 113.09 grams of methamphetamine of 99% purity. (Tr. [133] at 28.)

Between January 11, 2022, and January 19, 2022, agents intercepted phone calls in which movant arranged the delivery of 16 ounces of methamphetamine by a

6

co-defendant to a customer. (*See id.* at 29–30.) After the exchange, the customer complained that the product was "too broken up," and that he was going to give it back to the co-defendant. (*Id.* at 30.) Law enforcement officers conducted a traffic stop of the co-defendant, and found 5.96 grams of methamphetamine on 93% purity on his person. (*Id.*)

On June 11, 2022, agents intercepted phone calls between movant and a co-defendant coordinating a drug transaction. (*Id.* at 31.) Agents surveilled movant's residence, and observed two co-defendants arrive, carrying what appeared to be a large amount of cash. (*Id.*) A few minutes later, a co-defendant walked back to his truck carrying a bag, later confirmed to contain three pounds of marijuana, 60 oxycodone pills, and two ounces of cocaine. (*Id.*)

On June 16, 2022, agents observed movant and a co-defendant walk to a shed at the back of movant's stash house property. (*Id.*) A short time later, the co-defendant returned alone, holding an item under his right arm, and left in his vehicle. (*Id.*) Polk County officers attempted a traffic stop of the co-defendant's vehicle and witnessed him throw a bag out of the vehicle before coming to a stop. (*Id.* at 32.) The bag contained 1486.7 grams of methamphetamine of 85% purity. (*Id.*)

On July 11, 2022, agents executed search warrants of Movant's residence and stash house.  (*Id.*)  At his residence, agents discovered a digital scale with methamphetamine residue, a .22 caliber revolver, and assorted handgun and shotgun ammunition.  (*Id.*)

In September 2022, after his initial arrest, movant arranged for a DEA confidential source ("CS") to hold a Tupperware containing methamphetamine for him.  (*Id.*; *see also* PSR ¶ 388.)  The Tupperware contained 985 grams of methamphetamine of 95% purity.  (Tr. [133] at 32.)  Between October and November 2022, movant attempted to arrange the return of the methamphetamine from the CS, and the CS deposited sham methamphetamine in the bed of movant's truck on November 7, 2022.  (*Id.*)

The Court asked movant if he agreed with the government's factual basis, and movant testified that he did.  (*Id.* at 33.)  The Court further asked Movant if he was, in fact, guilty of conspiracy to possess with intent to distribute the drugs charged in Count 1, and Movant responded that he was.  (*Id.*)

The Court conducted a thorough colloquy to ensure that movant was aware of the rights that he was waiving by pleading guilty, including the right to plead not guilty, the right to a speedy and public jury trial where he would be presumed

8

innocent and the government would be required to prove his guilt beyond a reasonable doubt, the right to be represented by counsel at all times, the right to see, hear, and cross-examine witnesses, the right to elect to or decline to testify in his own defense, and the right to compel the attendance of witnesses to testify in his defense. (*Id.* at 11–14.)  At the Court's direction, the government informed movant that he faced a statutory maximum penalty of life imprisonment, and a mandatory-minimum penalty of 15 years' imprisonment under the enhanced penalty provisions of 21 U.S.C. §§ 841(b)(1)(A) and 851.  (*Id.* at 34.)  The Court explained the operation of the advisory Sentencing Guidelines, that the Court could impose any sentence up to the statutory maximum, that there is no parole in the federal system, that movant's plea agreement contained a limited waiver of his appellate and collateral attack rights, and that his guilty plea could have collateral consequences on his right to vote, right to hold public office, right to serve on a jury, and right to possess a firearm.  (*Id.* at 35–41.)  In every instance, movant testified that he understood.  (*See id.* at 11–14, 33–41.)  As a result, the District Court accepted movant's guilty plea, finding that the plea was knowingly, voluntarily, and intelligently made, and supported by a factual basis corresponding to each of the essential elements of the offenses.  (*Id.* at 41–42.)

9

Prior to sentencing, the U.S. Probation Office prepared a presentence investigation report ("PSR"). (*See* PSR [96].) The initial PSR attributed more than 270,000 kilograms of CDW to movant based in significant part on evidence of drug transactions from numerous wiretapped phone calls. (*See* Resp. [138] at 21; PSR ¶ 19.) The government objected to the drug quantities assigned in paragraphs 54, 101, 125, and 168 as too speculative or for potential double-counting. (*See* Obj. [96-2] at 1.) Movant's counsel joined the government's objections and additionally objected to paragraphs 38 and 66, arguing that these transactions were not connected to movant or were never completed. (*See* Obj. [96-1] at 1–2.) Movant's counsel also initially objected to the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, noting that movant had always maintained that the firearm belonged to his wife, but withdrew his objection because the § 2D1.1(b)(1) enhancement was stipulated in the plea agreement. (*See id.* at 2; PSR ¶ 399.)

In response to the parties' objections, the final PSR attributed 121,368.3 kilograms of CDW to movant, resulting in a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1). (PSR ¶ 398.) The PSR applied a two-level enhancement under § 2D1.1(b)(1) for possession of a firearm, a two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purposes of distributing controlled

10

substances, a four level enhancement under § 3B1.1(a) because movant was a leader or organizer of a criminal activity involving five or more participants, and a three-level reduction under §§ 3E1.1(a)–(b) for acceptance of responsibility, resulting in a total offense level of 43. (*See id.* ¶¶ 399–407.) Based on a total offense level of 43, and a criminal history category of II, the PSR calculated the movant was subject to an advisory guideline range of life imprisonment. (*Id.* at 69.)

At sentencing, the District Court adopted the final PSR's guidelines calculations without further objection. (Tr. [134] at 3–4, 17–18.) In accordance with the plea agreement, the government recommended a 240-month sentence. (*Id.* at 17.) The government noted that the recommendation constituted a substantial downward variance from the guideline range of life imprisonment, but argued that a 20-year sentence was necessary based on the scale of movant's activities and in the interest of specific deterrence considering that movant resumed drug trafficking within three years after the termination of supervision from his prior 2016 federal drug trafficking conviction and continued trafficking drugs while out on bond after his initial arrest. (*Id.* at 12–13, 15.) The defense requested a mandatory-minimum 15-year sentence, arguing that movant would be 69 years old on completion of a 15-year sentence, that

11

movant promptly accepted responsibility, and that movant was facing a much more severe sentence than his co-defendants.  (*Id.* at 9–10.)

Movant's daughter spoke on his behalf at sentencing, and the District Court considered letters from movant's family members.  (*See id.* at 5–8.)  After allocution, the District Court noted that the government's 20-year recommendation was "very low" and "more than [movant] could have ever expected" where the guideline range was life imprisonment, the average sentence in similar cases was 313 months' imprisonment, and the median was 338 months.  (*Id.* at 19–20, 22.)  The Court emphasized that the recommendation was "so low that if the Government didn't agree to it and the Court imposed it, I would have some reason to think that I might … be reversed if the Government appealed it."  (*Id.* at 20.)  Nevertheless, the Court found that a twenty-year sentence was "not *de minimis*," particularly considering movant's age, the need to avoid unwarranted disparity with other similar defendants who received longer sentences, and the need for general and specific deterrence, especially considering "how quickly [movant] reoffended in a substantial way, and the fact that while on bond in this case … [movant] was found again trafficking in illegal drugs."  (*Id.* at 20–23.)  As a result, the District Court found that the government's recommended 240-month sentence was sufficient, but not more than

necessary, considering the 18 U.S.C. § 3553(a) factors. (*Id.* at 23.) The Court sentenced movant to 240 months' imprisonment, to be followed by five years' supervised release. (J. [111] at 3–4.)

Movant did not appeal his conviction or sentence but timely filed this § 2255 motion. (*See* Mot. [127].)

## II.     28 U.S.C. § 2255 MOTION

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). No evidentiary hearing is required if the record conclusively demonstrates that the § 2255 movant is not entitled to relief. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). In his § 2255 Motion, movant raises two grounds for relief.

### A.  Ground 1

In Ground 1, movant alleges that his plea and sentencing counsel, Twyman, rendered constitutionally ineffective assistance for "misadvising" him of his "sentencing possibilities."  (Mot. [127] at 4, 15–16.)  Movant contends that but for counsel's "misadvice," he would not have pled guilty and would have represented himself *pro se*.  (*Id.* at 15–16.)  Movant also alleges that he asked counsel to object to "various claims," a four-level adjustment under the Sentencing Guidelines for his leadership role in the offense, and "other enhancements," but counsel failed to do so. (*Id.*)  Movant apparently asserts that counsel did not advise him that the leadership role enhancement would render him ineligible for earned time credits under the First Step Act of 2018 ("FSA") and his total offense level would result in his being placed in a disciplinary institution.  (*Id.* at 15.)

The Sixth Amendment right to counsel includes the right to the effective assistance of competent counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  To make a successful claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient only if it falls below the wide range of

competence demanded of attorneys in criminal cases. *Id.* at 687–88. Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Strickland*'s two-part test applies in the context of guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162-64 (2012). Because a voluntary, unconditional guilty plea generally waives all pre-plea non-jurisdictional defects in the proceedings, a defendant who enters a guilty plea can attack only "the voluntary and knowing nature of the plea." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). A defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice that he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases, in violation of *Strickland*. *Premo v. Moore*, 562 U.S. 115, 121, 126 (2011). In order to establish prejudice in the context of a guilty plea, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 129 (quotations omitted). This means that "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

15

In evaluating the knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Courts apply a "strong presumption" that statements made by a defendant during the plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

The Court liberally construes movant's claim in Ground 1 to include that (a) his guilty plea was not knowingly and intelligently made as a result of counsel's alleged misadvice about his likely sentence and the collateral consequences of his guilty plea, and (b) that his counsel was ineffective at sentencing for failing to object to the leadership role enhancement and other enhancements[1] under the Sentencing Guidelines. (*See generally* Mot. [127] at 4, 15–16.) Movant has not shown that counsel's performance was deficient or that he was prejudiced.

To the extent that Movant challenges the voluntariness of his guilty plea based on counsel's alleged unspecified "misadvice" "about possibilities of sentencing," his

---

[1] To the extent that movant also asserts that counsel was ineffective for "misadvising" him and failing to object to the drug quantity determinations in the PSR, (*see* Mot. [127] at 15), his claims are addressed with Ground 2, below.

16

claim is refuted by the record.  Movant does not specify what, if any, sentencing predictions or promises counsel purportedly made to him.  (*See generally id.*) Movant testified during his plea colloquy that no one had made any promises not contained in the plea agreement to induce his guilty plea, and counsel testified that he had not made any promises to movant concerning the specific sentence he will receive. (Tr. [133] at 23–24.)  Movant's unsupported assertions in his § 2255 Motion are insufficient to carry his heavy burden to show that his plea colloquy testimony was false. *See Blackledge*, 431 U.S. at 74; *Medlock*, 12 F.3d at 187.

Further, even if counsel had made an erroneous sentence prediction, no deficient performance or prejudice results where, as here, the Court conducted an adequate plea hearing informing movant of the minimum and maximum penalties. *See United States v. Pease*, 240 F.3d 938, 940–41 (11th Cir. 2001) (rejecting argument by defendant who received an enhanced sentence as a career offender that his plea was not knowing and voluntary because the court advised him that he faced a statutory maximum of life and despite counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based

17

on misrepresented facts about the case and sentencing because, *inter alia*, "[t]he court ... explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else.") (*per curiam*); *see also United States v. Smith*, 371 F. App'x 901, 905 (10th Cir. 2010) ("miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel") (citations omitted); *United States v. Macon*, 91 F. App'x 239, 243 (3d Cir. 2004) ("[W]e have long held that an erroneous sentencing prediction by counsel does not constitute ineffective assistance of counsel where an adequate plea hearing was conducted.").  In this case, the District Court informed movant that he was subject to a 15-year mandatory minimum and a maximum of life imprisonment, that the Court could impose any sentence up to and including the statutory maximum, and that he would not be able to withdraw his guilty plea if he received a sentence that was longer than he expected.  (*Id.* at 34, 36, 40–41.)  Movant testified in all instances that he understood.  (*See id.*)  As such, Movant's guilty plea was intelligently and voluntarily made with awareness of maximum and mandatory-minimum penalties he faced, and he has not shown ineffective assistance of counsel.  *See Pease*, 240 F.3d at 940–41.

18

To the extent that movant alleges that his counsel failed to advise him that he would "get roasted by the [guideline] enhancements added at sentencing," his contention is again refuted by the record.  Movant's plea agreement stipulated that he was responsible for was at least 61,111 grams of converted drug weight ("CDW"), that he would receive a two-level upward adjustment under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, a two-level upward adjustment under § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing controlled substances, and a four-level upward adjustment under § 3B1.1(a) for his leadership role in the offense. (*See* Tr. [133] at 16.)  Movant signed the plea agreement. (*Id.* at 3–5.)  Further, the government read these terms into the record at movant's plea hearing, and movant testified that this accurately reflected his agreement with the government. (*Id.* at 22–23.)  The District Court specifically questioned movant if he understood the sentencing guideline recommendations in the plea agreement, and movant testified that he did. (*Id.* at 22.)  As such, the record flatly contradicts movant's claim that he was unaware that he would be subject to offense level enhancements under the Sentencing Guidelines. *See Blackledge*, 431 U.S. at 74; *Medlock*, 12 F.3d at 187.

To the extent that movant attempts to allege that his counsel rendered ineffective assistance by failing to advise him that he would be ineligible to earn time

credits and would be placed in a disciplinary institution, "[a]n attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation." *Sims v. United States*, 785 F. App'x 632, 634 (11th Cir. 2019) (*per curiam*).  As such, these allegations will not support an ineffective-assistance challenge to the voluntariness of his guilty plea.  S*ee United States v. Riley*, No. 21-CR-06976 CJS, WL 3514090, at *9 (W.D.N.Y. Dec. 8, 2025) (counsel was not ineffective for failing to advise defendant that his guilty plea would make him ineligible for time credits under the FSA); *United States v. Robinson*, No. 5:21-CR-0064-DCR-EBA-1, 2025 WL 3205867, at *8 (E.D. Ky. Oct. 1, 2025) (same), *R&R adopted*, 2025 WL 3158915 (E.D. Ky. Nov. 12, 2025); *Perales-Venegas v. United States*, No. 2:11-CV-0103-MJP, 2011 WL 806614, at *1 (W.D. Wash. Mar. 2, 2011) (counsel's failure to advise defendant that he would be ineligible for placement in a minimum-security facility or other less restrictive environment was not ineffective assistance).

Further, to the extent that movant alleges that his counsel rendered ineffective assistance at sentencing for failing to object to the guideline enhancements, counsel stipulated to these enhancements in order to obtain a highly favorable plea bargain for movant.  (*See* Tr. [133] at 15–17.)  In any event, movant has not shown that the

20

enhancements were erroneously applied.  Movant specifically complains that counsel failed to object to the four-level enhancement under § 3B1.1(a) for his leadership role in the criminal conspiracy.  (Mot. [127] at 15.)  Under § 3B1.1(a), the sentencing court must apply a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).  The admitted factual basis in this case showed that movant was the leader of a drug trafficking enterprise involving five or more participants, that he "fronted" or supplied lower-level dealers with kilogram quantities of methamphetamine and other illegal drugs, and directed lower-level participants to conduct drug transactions on his behalf.  (*See* Tr. [133] at 27–32); *see also United States v. Stanley*, 24 F.3d 1314, 1323 (11th Cir. 1994) (explaining that, in a drug distribution case, the management enhancement is appropriate for a defendant who arranges drug transactions, negotiates sales with others, and hires others to work for the conspiracy); *United State v. Matthews*, 168 F.3d 1234, 1250 (11th Cir. 1999) (finding that leadership role enhancement was appropriate where defendant fronted or sold cocaine to lower-level dealers who would then sell the drug to buyers).   Movant has not shown how the leadership enhancement was unwarranted, and his counsel did not perform deficiently for failing to raise meritless

21

objections.  *See, e.g.*, *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").  To the extent that movant complains that his counsel failed to object to "other enhancements," he does not specify what enhancements his counsel failed to object to or how counsel's failure to do so constituted ineffective assistance, and his claims are conclusory.  (*See generally* Mot. [127] at 4, 15–17.) *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that a movant is not entitled to federal habeas relief "when his claims are merely conclusory allegations unsupported by specifics.").

Nor can movant show prejudice with respect to any of his ineffective assistance claims where counsel negotiated a plea agreement for, and movant in fact received, a substantial downward variance from the low-end guideline range.  *See United States v. Marsh*, 548 F.Supp.2d 1295, 1302 (N.D. Fla. 2008) (explaining that, to establish prejudice in the sentencing context, a movant must show a reasonable probability that "but for" counsel's deficient performance he would likely have received a lesser sentence).  As repeatedly noted by the District Court, movant's 240-month sentence was significantly less than the guideline range of life imprisonment. *Cf. Daniels v. United States*, No. 16-17495-C, 2017 WL 6550592 at *8 (11th Cir.

2017) (noting that § 2255 petitioner could not show prejudice where she received a substantial downward variance). Ultimately, movant has not shown that it would have been rational under the circumstances to reject the plea agreement where eight additional felony counts were dismissed under the plea agreement, including an 18 U.S.C. § 924(c) offense carrying a mandatory consecutive five-year term of imprisonment, and he received a substantially below-guideline sentence. *See Diveroli*, 803 F.3d at 1263. Movant's Ground 1 does not warrant relief.

**B.     Ground 2**

In Ground 2, movant alleges that his counsel was ineffective for failing to investigate and challenge the "outrageously inflated" drug quantity that he was held responsible for. (Mot. [127] at 5, 17–18.) Plaintiff contends that most of the drugs were "ghost drugs" that were not proven to actually exist, and that if his counsel had "investigated fully and challenged properly the drug amount," his offense level would have been a "30 to 32" "at most," and he would have received a significantly shorter sentence. (*Id.* at 18.)

Movant has not shown that his counsel performed deficiently for failing to investigate, advise him, and /or challenge the final drug quantity determinations in this case. As an initial matter, counsel did challenge the initial PSR's drug quantity

23

determinations, and his objections significantly reduced the drug quantity that movant was responsible for at sentencing from 276,965 kilograms of CDW to 121,368.3 kilograms of CDW.  (*See* Objs. [96-2] at 1–2; PSR ¶ 394.)  Movant does not specify what further investigations counsel should have made, how counsel should have further objected to the drug quantity determination, or how he reached his offense level calculation of "30 to 32," and his claim is conclusory.  (*See* Mot. [127] at 5, 17–18); *Tejada*, 941 F.2d at 1559.

It appears that movant characterizes as "ghost drugs" any drug quantities assigned based on wiretap evidence.  (*See* Mot. [127] at 17–18.)  A sentencing court is permitted to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  USSG § 6A1.3(a).  Relevant information in this case included numerous wiretapped conversations between movant and other individuals arranging drug transactions.  (*See* PSR ¶¶ 17–393.)  Federal courts repeatedly have found that wiretap evidence may support sentencing facts.  *See, e.g., United States v. Armstrong*, 60 F.4th 1151, 1169 (8th Cir. 2023) (finding that sentence enhancement for maintaining a premises used for distributing drugs was warranted where wiretap evidence indicated that the residence

24

served as a base of operations, notwithstanding that officers were unable to recover an appreciable quantity of drugs from the premises); *United States v. Hankton*, 432 F.3d 779, 790–91 (7th Cir. 2005) (affirming that district court properly considered wiretap phone conversations in determining that the defendant was responsible for distribution of more than 500 grams of crack cocaine under the Sentencing Guidelines); *United States v. Rawls*, 393 F. App'x 743, 747–48 (2d Cir. 2010) (affirming district court's drug quantity estimation based on wiretap evidence of the duration of the defendant's participation in the conspiracy).

Here, the District Court did not rely on "surmise or conjecture" in calculating the drug quantity attributable to movant. *See Rawls*, 393 F. App'x at 748. Instead, it attributed specific amounts that movant was recorded agreeing to deliver in his wiretapped phone calls. (*See* PSR ¶ 394.) The wiretap evidence was corroborated by co-conspirator statements and the recovery of drugs and other physical evidence. (*See* PSR ¶¶ 38, 50, 98, 99–101, 149, 191, 213, 216, 225, 227–30, 269, 327, 374, 376, 379, 381, 383, 386, 389.)

In any event, even if movant was held accountable only for (1) the 1,029.638 grams of methamphetamine physically seized on January 6, 2022; (2) the 113.4 grams of methamphetamine physically seized on January 12, 2022; (3) the 1486.7

25

grams of methamphetamine physically seized on June 16, 2022; and (4) the 985 grams of methamphetamine physically recovered by the DEA CS, all transactions that movant affirmatively admitted as part of the government's factual basis during his plea colloquy, (*see* Tr. [133] at 27–32), he would still be responsible for at least 66,843.56 kilograms of CDW, resulting in a base offense level of 36. (*See* PSR ¶ 349); U.S.S.G. § 2D1.1(c)(2). After the application of the enhancements under § 2D1.1(b)(1), § 2D1.1(b)(12), and § 3B1.1(a), and a three-level reduction for acceptance of responsibility under §§ 3E1.1(a)–(b), movant's total offense level would be 41. *See* U.S.S.G. §§ 2D1.1(b)(1), 2D1.1(b)(12), 3B1.1(a), 3E1.1(a)–(b). Based on a total offense level of 41 and a criminal history category of II, movant would be subject to a guideline range of 360 months' imprisonment to life, still well above the 240-month recommendation and actual sentence that he received under the plea agreement. *See* U.S.S.G. Sentencing Table, Ch. 5, Pt. A. As a result, movant cannot show that he was prejudiced by his counsel's failure to challenge drug quantities calculated based on wiretap evidence. *See Marsh*, 548 F.Supp.2d at 1302.

Further, as discussed above, movant cannot show that it would have been rational under the circumstances to reject the plea agreement where he received a substantially below-guideline sentence and the dismissal of eight other felony counts,

including a § 924(c) count carrying a mandatory consecutive term of imprisonment. *See Diveroli*, 803 F.3d at 126; *Daniels*, 2017 WL 6550592 at *8. Movant's Ground 2 does not warrant relief.

Accordingly, because neither of the grounds presented warrant relief, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED**.

III.   **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether … the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED**

27

that a COA be **DENIED**. *See id.* If the District Court adopts this recommendation and denies a COA, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## IV.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the 28 U.S.C. § 2255 Motion [127] be **DENIED** and that no certificate of appealability issue.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States magistrate judge.

**SO RECOMMENDED**, this 19th day of March, 2026.

_____
JOHN H. RAINS IV
United States Magistrate Judge

28